UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:13-cv-00019-MOC

| | |
|---|---|
| **DAISY LAWRENCE KENT,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| **CAROLYN W. COLVIN, Acting Commissioner of** ) | |
| **Social Security,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the court upon plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

**I.  Administrative History**

Plaintiff filed an application for a period of disability and Disability Insurance Benefits. Plaintiff's claim was denied both initially and on reconsideration; thereafter, plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"). After conducting a hearing, the ALJ issued a decision which was unfavorable to plaintiff, from which plaintiff appealed to the Appeals Council. Plaintiff's request for review was denied and the ALJ's decision

1

affirmed by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, plaintiff timely filed this action.

## II.  Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.  Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays v. Sullivan, supra.

## IV.  Substantial Evidence

### A.  Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had he been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that it is.

**B.    Sequential Evaluation**

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

a.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b.  An individual who does not have a "severe impairment" will not be found to be disabled;

c.  If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d.  If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

      e.      If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b)-(f). In this case, the Commissioner determined plaintiff's claim at the fourth step of the sequential evaluation process.

### C. The Administrative Decision

The Commissioner determined that plaintiff is not disabled and that she "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except needs to sit most of the day – 6 out of 8 hours." R. at 16. He found that while she has several limitations regarding her mobility, she was "capable of performing past relevant work as a telephone operator and shift supervisor." R. at 17.

### D. Discussion

#### 1. Plaintiff's Assignments of Error

Plaintiff has made the following assignments of error: 1) the ALJ and Appeals Council erred in failing to ascribe controlling weight to plaintiff's orthopedist; 2) the ALJ and Appeals Council erred in failing to give proper deference and weight to the opinion of plaintiff's treating physician; 3) the ALJ and Appeals Council erred in rejecting the opinion of the vocational expert; and 4)

the ALJ and Appeals Council erred in failing to follow the statutory regulatory guidelines. Plaintiff's assignments of error will be discussed seriatim.

## 2. First Assignment of Error

Plaintiff first contends that that the opinions her treating physicians, Dr. Massey and Dr. Ellington should have been given controlling weight in the ALJ's decision. A treating physician is a physician who has observed the plaintiff's condition over a prolonged period of time. Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). The opinion of a treating physician is only entitled to controlling weight if it is supported by "clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2).

> If a physician's opinion is not given controlling weight, then the "factors listed below" and in paragraphs (d)(3) through (5) used to determine the amount of weight to be given it are (1) the length of the treatment relationship and the frequency of examination ("the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion"); (2) the nature and extent of the treatment relationship; (3) supportability ("the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion"); (4) consistency ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); and (5) specialization ("[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"). Id. The regulation also makes clear, however, that the ultimate determination

of disability is reserved for the Commissioner, and "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 416.927(e)(1).

Pittman v. Massanari 141 F.Supp.2d 601, *608 (W.D.N.C. 2001)(Horn, C.M.J.)

Here, the ALJ considered Dr. Massey's opinion that plaintiff was disabled but declined to assign it any weight as he determined it to be inconsistent with other evidence of record. Dr. Massey had earlier noted that plaintiff's range of motion in her ankle was of "good quality" and she displayed a moderate amount of edema. R. at 279.

The ALJ also considered Dr. Ellington's evaluation from February 5, 2012 in which Dr. Ellington determined that during an eight-hour day, plaintiff should sit and elevate her legs for four hours, stand for two hours, and walk for two hours. R. at 302. Dr. Ellington also noted that plaintiff had the ability to occasionally squat and crawl, and frequently bend and reach above shoulder level. R. at 303. The ALJ considered this evaluation and reasonably assigned it "great weight," and "crafted the RFC to allow sitting for 6 out of 8 hours." R. at 16.

The record reflects that the ALJ considered and rejected plaintiff's argument at the hearing regarding what Dr. Ellington actually determined. Plaintiff appears to have suggested at the hearing that the February 5 evaluation indicates that

plaintiff should lie down and elevate her foot for four hours. Id. The ALJ considered and rejected this argument in his opinion as follows:

> The claimant's attorney stated this form calls for the claimant to lie down and elevate her foot for four hours. This is not the way I read the form. The form states. "(a) Lie down/elevate legs . . . . . 4 hours." with the number 4 being hand written. However, the doctor was careful to draw a circle around the word "elevate." But not around the words "Lie down." This means that the doctor was signifying only that she needed to elevate her foot 4 hours, and not that she also needed to lie down while doing so. Additionally, the claimant mentioned that she uses a small box-like footstool to elevate the foot at home and while she was at church and the beatify shop to elevate her leg. Thus, such device would work in the work-setting as well.

Id. The undersigned has reviewed the form and finds that the ALJ's interpretation on this point reasonable. The ALJ considered Plaintiff's testimony on her daily activities and reasonably determined that plaintiff, while somewhat limited in her mobility, was able to perform such activities as going to the grocery store; taking care of her own personal hygiene; doing her own laundry; driving a car using her injured foot; going to church and teaching Sunday school; and visiting the beauty shop regularly.

The ALJ also gave substantial weight to the opinion of Dr. Cox, a nonexamining state agency physician, whose testimony contradicted Dr. Massey's opinion that plaintiff was disabled but was consistent with the ALJ's interpretation of plaintiff's testimony and Dr. Ellington's February 5 evaluation.

Unlike many primary care providers or even medical specialists that a claimant may typically visit, state agency physicians are experts in the evaluation of the medical issues in disability claims under the Social Security Act, and the ALJ must consider such expert opinions insofar as they are supported by evidence in the case record. 20 C.F.R. § 404.1527(f) (2007); SSR 96-6P. Inasmuch as the ALJ is engaged in a determination of work disability, the opinions obtained from nonexamining medical sources (such as state agency physicians) may be entitled to greater weight than the opinions of treating or examining sources. SSR 96-6p. The opinion of a nonexamining physician can, therefore, constitute substantial evidence in support of the ALJ's decision when it is consistent with the record. Smith v. Schweicker, 795 F.2d 343, 345-346 (4th Cir. 1986); Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984).20 C.F.R. § 404.1527(d)(3) (2007) (the weight afforded to a medical opinion depends upon the amount of relevant evidence, particularly medical signs and laboratory findings, provided in support of the opinion). Contrary to Dr. Massye's evaluation, Dr. Cox concluded that plaintiff could, among other things, sit and stand, or walk for about six hours in an eight hour workday; occasionally lift and/or carry 20 pounds; and frequently lift and/or carry ten pounds. R. at 64.

After reviewing the record, it is clear that the ALJ properly considered Dr. Massey's opinion and declined to afford it any weight on the basis that it was inconsistent with the record as a whole.

The second form completed by Dr. Ellington on October 19, 2012 does not alter the court's determination that the ALJ's decision was reasonable and supported by substantial evidence. While this form was completed on October 19, 2012 after the ALJ's opinion was issued on September 26, 2012, the Appeals Council considered this new evidence and determined that it did not provide a basis for reviewing the ALJ's decision.[1]

The form is questionnaire apparently prepared by plaintiff's counsel and then completed by Dr. Ellington, and seems to be in reference to the disagreement over Dr. Ellington's February 5 evaluation. As discussed above, the disagreement during the disability hearing was whether Dr. Ellington had determined in his February 5 evaluation that plaintiff needed to elevate her leg "at waist-level" or elevate her leg while lying down. The vocational expert had testified that such a requirement would be inconsistent with "gainful employment at virtually any skill or exertional level." R. at 57. As discussed above, however, the ALJ determined

---

[1] Nothing requires the Appeals Council to articulate its reasoning when new evidence is submitted and the Council declines review. Meyer v. Astrue, 662 F.3d 700, 706 (4th Cir. 2011).

9

that Dr. Ellington had made no such recommendation. The Appeals Council reviewed the ALJ's determination alongside this new piece of evidence and reasonably determined that it did not provide a basis for reviewing the ALJ's decision.

Plaintiff contends that this second opinion should be afforded "controlling weight" in the ALJ's determination as there is "no medical evidence contrary to the opinions expressed by Plaintiff's treating doctors;" her relationship with the physicians "covers an extensive longitudinal period of time;" and their opinion is not inconsistent with other substantial evidence in the record.

As discussed above, the ALJ properly considered and rejected Dr. Massey's opinion as it was inconsistent with other evidence of record. With regards to Dr. Ellington, Defendant argues that the only difference between the two forms is that the latter contends that plaintiff must elevate her leg "at or above waist level" while the former does not. Defendant further argues that because the ALJ has already considered such limitation and declined to incorporate it into his final determination, a remand for the explicit evaluation of Dr. Ellington's October form would is unwarranted.

The Appeals Council is required by 20, Code of Federal Regulation, Part 404.970, to review certain decisions of an ALJ. In pertinent part, the regulation provides:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970.

As noted above, the Appeals Council considered Dr. Ellington's second submission and rejected plaintiff's appeal. Upon review of the entire record, the undersigned finds that such determination is clearly supported by substantial evidence. Dr. Ellington's October 19, 2012 form was one prepared and submitted by plaintiff's counsel, not one completed in the regular course of an evaluation, it was reasonable for the Appeals Council to find the form unpersuasive. In sum, substantial evidence exists to support the ALJ and Appeals Council's determination regarding the proper weight to be afforded to plaintiff's physicians, and the first objection is overruled.

### 3. Second Assignment of Error

Plaintiff's second assignment of error is that the ALJ and Appeals Council erred in failing to give proper deference and weight to the opinion of Dr. Ellington, plaintiff's orthopedist. As discussed above, substantial evidence exists to support the weight assigned by the Commissioner to Dr. Ellington's October 19, 2012 form.

The ALJ considered and rejected the notion that Dr. Ellington's February 5, 2012 medical evaluation indicated that plaintiff needed to elevate her leg at or above waist level. In doing so, the ALJ articulated a well-reasoned opinion for his finding, namely that on the February 5, 2012 form, Dr. Ellington specifically declined to circle the words "lie down." Similarly, the Appeals Council considered and rejected the October 19, 2012 form which was prepared by plaintiff's counsel. With this in mind, the court cannot say that the Commissioner's ultimate determination was unreasonable or unsupported by substantial evidence. The Appeals Council evaluated the second form along with the entire record and determined that no reason for reviewing the ALJ's decision was warranted.

### 4. Third Assignment of Error

Plaintiff's third assignment of error is that the ALJ and the Appeals Council erred in rejecting the opinion of the vocational expert, Robert Brabham, who testified at plaintiff's disability hearing. At the hearing, Mr. Brabham responded to

two hypotheticals: one posed by the ALJ and one by the plaintiff's attorney. In response to the ALJ's hypothetical, Mr. Brabham testified that plaintiff could, with the disabilities the ALJ found credible, adequately perform a number of her former positions. Plaintiff, however, contends that the ALJ "misinterpreted the assessment of Dr. Ellington" when forming his hypothetical.

To the contrary, however, the ALJ reasonably interpreted Dr. Ellington's February 5, 2012 form as not requiring plaintiff to lie down while elevating her legs. And with regards to Dr. Ellington's second form, the Appeals Council considered this new evidence and determined that it did not warrant reviewing the ALJ's decision. The undersigned finds that substantial evidence exists to support the Commissioner's determination on plaintiff's disability, namely plaintiff's own testimony regarding her mobility, Dr. Ellington's original evaluation form, Dr. Cox's opinion, and the suspect origins of the second Dr. Ellington form.

### 5. FOURTH ASSIGNMENT OF ERROR

Plaintiff's final contention is that the "ALJ failed to ascribe any significance to plaintiff's pain." Pl.'s Br. 22. Specifically, plaintiff contends that the ALJ ignored the medically documented evidence of plaintiff's pain in his opinion. The correct standard and method for evaluating claims of pain and other subjective symptoms in the Fourth Circuit has developed from the Court of Appeals' decision

in <u>Hyatt v. Sullivan</u>, 899 F.2d 329 (4th Cir. 1990)(<u>Hyatt III</u>), which held that "[b]ecause pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." <u>Id</u>., at 336. A two-step process for evaluating subjective complaint was developed by the Court of Appeals for the Fourth Circuit in <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996). This two-step process for evaluating subjective complaints corresponds with the Commissioners relevant rulings and regulations. <u>See</u> 20 C.F.R § 404.1529; SSR 96-7p.[2]

Step One requires an administrative law judge (hereinafter "ALJ") to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." <u>Craig</u>, 76 F.3d at 594.

Step Two requires that the ALJ next evaluate the alleged symptoms' intensity and persistence along with the extent to they limit the claimant's ability to engage in work. <u>Id.</u>, at 594; <u>see</u> <u>also</u> 20 C.F.R. § 404. 1529(c); SSR 96-7p. The ALJ must consider the following: (1) a claimant's testimony and other statements

---

[2] "The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision." S.S.R. 96-7p (statement of purpose).

concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment. Craig, 76 F.3d at 595; 20 C.F.R. § 404. 1529(c); SSR 96-7p. The term "other relevant evidence" includes: a claimant's activities of daily living; the location, duration, frequency and intensity of their pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medications taken to alleviate their pain and other symptoms; treatment, other than medication, received; and any other measures used to relieve their alleged pain and other symptoms. Id.

A review of the ALJ's opinion reveals that he properly considered all available evidence and found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." R. at 15. In accordance with Fourth Circuit law, the ALJ next considered the "intensity, persistence, and limiting effects" of plaintiff's symptoms. In his final opinion, the ALJ devoted considerable time in reviewing plaintiff's medical history, specifically Drs. Massey and Ellington's evaluations and plaintiff's records from Southeast Pain Management.

From Dr. Massey's evaluation in August 2011, the ALJ noted that plaintiff rated her pain as a "7." The ALJ also noted the presence of a moderate amount of

edema around the ankle joint; "some ankle joint osteophytes"; and some "faint lucency around the tibial component." R. at 14. The ALJ specifically noted Dr. Massey's assessment that plaintiff had "joint pain in foot secondary to severe pes valgus," as well as his opinion that plaintiff was "currently disabled and not capable of performing strenuous activity." Id.

The ALJ likewise gave careful consideration to plaintiff's records from Southeast Pain Management. From those records, he noted that plaintiff rated her pain at a level 8; that she had "edema around the right ankle joint with pain to palpation diffusely"; and that in addition to the discomfort in her ankle, plaintiff complained of "left low back pain and bilateral knee pain." R. at 14. He noted that prescription pain medication and Celebrex were not helping but that methadone and Lortab did provide relief.

Finally, the ALJ carefully considered Dr. Ellington's evaluation, specifically noting the diagnosis that plaintiff suffered from "an ankle replacement with talar subsidence with hind foot valgus and subtalar arthritis and deformity." R. at 15. Contrary to plaintiff's contention, the ALJ also specifically noted that plaintiff suffered from "significant" pain across the ankle and hind foot. The ALJ then noted that Dr. Ellington had completed a Physical Capacities Evaluation form

indicating that plaintiff "should elevate her legs a total of four hours, sit for 4 hours, stand for 2 hours and walk for 2 hours during an eight-hour day." Id.

After carefully reviewing these medical evaluations, the ALJ considered plaintiff's own testimony concerning the "intensity, persistence and limiting effects" of her symptoms and determined that it was not credible. He determined that such testimony was inconsistent with Dr. Ellington's Physical Evaluations Form. He also determined that plaintiff's testimony regarding her daily activities further discredited her claim of total disability. Plaintiff testified that she did her own laundry; could drive a car using her injured foot; went to church and taught Sunday school; and went to the beauty shop.

The ALJ also gave substantial weight to the findings of Dr. Cox, the nonexamining state physician whose testimony also rebutted plaintiff's claims of total disability. Dr. Cox concluded that plaintiff could "sit, stand, or walk for about six hours in a work day." R. at 16.

It is thus evident that ALJ weighed and considered all the evidence available at the time he issued his opinion. Consistent with his duty to consider conflicting evidence and assess credibility, he simply found some evidence more credible than other evidence. Having reviewed the record and the ALJ's opinion, the undersigned cannot say that the ALJ erred in his determination that plaintiff is not

17

disabled. Contrary to plaintiff's contentions, the ALJ properly considered the evidence of plaintiff's pain, along with other conflicting evidence, and issued his decision based on such.

### E. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra, plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed

**ORDER**

**IT IS, THEREFORE, ORDERED** that

(1) the decision of the Commissioner, denying the relief sought by plaintiff, is **AFFIRMED**;

(2) plaintiff's Motion for Summary Judgment (#7) is **DENIED**;

(3) the Commissioner's Motion for Summary Judgment (#11) is **GRANTED**; and

(4) this action is **DISMISSED**.

Signed: September 16, 2013

Max O. Cogburn Jr.
United States District Judge